## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

### WILLIAMS AND BLACKWELL v. SLOAN, &c.

#### January 13.

1. W and S, partners, convey all their social and individual property to trustees for the payment of their social and individual debts, and the deed provides that any creditor taking under the deed shall be held to release them from any further liability. HELD :

    1. The execution of this deed by S was not a reduction into possession of his wife's equitable claim upon W, of which neither W nor S had any knowledge at the time the deed was executed.

    2. The fact that the deed provided for a release of W and S by their creditors from further liability, does not work a reduction of the claims of the wife of S into possession, or preclude her from satisfaction of her claim out of the individual property of W in the hands of the trustees.

    3. The fact that the trustees had in their hands the property of both W and S is not of itself a reduction into possession by its trustees of the claim of the wife of S. There must be some distinct act indicative of their intention to transfer this special claim from the assets of W to the assets of S in their hands as trustees.

This was an appeal by C. U. Williams and J. G. Blackwell, trustees, from two decrees of the chancery court of the city of Richmond in a cause depending in said court, in which G. P. Hawes and Jeannie H., his wife, were plaintiffs, and said Williams and Blackwell, trustees in a deed from C. T. Wortham & Co., and said Wortham, Sloan and Morton H. Sloan were defendants, and in a cross-bill filed by the said Morton H. Sloan, by her next friend, against the said parties. The case is fully stated by Judge *Christian* in his opinion.

VOL. LXXV—18.

*Johnston, Williams & Boulware,* for appellants.

*Ould & Carrington, Kean & Davis,* for appellees.

CHRISTIAN, J., delivered the opinion of the court.

The court is of opinion that the chancery court of the city of Richmond did not err in declaring by its decree pronounced on the 1st of May, 1877, that the appellee, Mrs. Sloan, is entitled to a settlement in equity of the whole amount, $1,578 with interest, reported by Commissioner Leake as due by C. T. Wortham, trustee (her father), on the 30th of April, 1865, the date of her marriage; and in directing the investment of that fund to the sole and separate use of Mrs. Sloan during her life, with remainder to such of her children as should survive her.

The correctness of this decree depends upon the question whether the *chose* in action, which is the foundation of the wife's claim, *was ever reduced into possession* by the husband, or his assignees. If it was, then the wife had no equity to a settlement out of it. If it was not, the settlement was a proper and reasonable one, and must stand. A brief reference to the facts and the application to them of well recognized principles of law will determine this question.

The record shows that Charles T. Wortham (who has been twice married) first intermarried with Mary Jane Hutchinson; that Jane Hutchinson, the mother of Mrs. Wortham, by her will duly admitted to probate in November, 1850, devised to her son-in-law, Charles T. Wortham, trustee, certain real estate in the city of Richmond in trust for the sole use of his wife, Mary Jane Wortham, for life with the remainder in fee to her children; that in 1851 Charles T. Wortham, the trustee, sold the trust property and purchased other real estate in the city of Richmond, to be held by him upon the same trusts declared in the will

of Mrs. Hutchinson; that Mrs. Wortham died in April, 1859, leaving two children, Morton, who intermarried with the appellee, John A. Sloan, and Jennie, who intermarried with the appellee, Hawes; that the said Charles T. Wortham continued to reside upon the trust property until December, 1872.

It seems that the said Wortham was up to that time, as was also the counsel in the cause, under the impression and belief that he had a life estate in the said trust property under the will of the said testatrix. It was only discovered after the said Wortham became greatly embarrassed and was about to make a deed to secure his numerous creditors that in point of fact he had no interest in the trust property whatever, but simply held the legal title as trustee for his wife and children.

The appellee Sloan, shortly after his intermarriage with Morton, the daughter of Charles T. Wortham, became a partner in business of the said Wortham, trading under the firm and style of Charles T. Wortham & Co.

On the 16th of December, 1872, the firm of Charles T. Wortham & Co., becoming greatly embarrassed and desiring to secure their creditors, executed a deed by which they conveyed to Williams and Blackwell, trustees, all of the separate and social assets of the firm and of each partner, all property and rights of property, whether in possession or in action, in *trust* that the separate estate of each partner should be first applied to the payment of separate debts, and the surplus, if any, should be applied to the payment of partnership debts, if the social assets should be insufficient; and that any surplus which might arise from the social assets, after paying the social creditors, should be applied to the payment of the individual debts of the partners, in proportion to their individual interests in such assets.

It was declared upon the face of the deed that its true

meaning and intent was "to secure to the said Wortham and Sloan the benefit of a discharge from all their social and separate indebtedness * * * * to the same extent, in all respects, as they could obtain from a court of bankruptcy were their assets therein administered; and a receipt by any of the creditors of the said Wortham or of the said Sloan, social or separate, of any money or other benefit under this deed, shall be considered and held to be a full consent on their part to each and every provision of this deed."

The trustees entered upon the execution of this trust and took possession of all the assets, both social and separate, of the grantors, Charles T. Wortham & Co., and proceeded to convert them into money.

In September, 1874, Hawes and wife filed their bill in the chancery court of the city of Richmond, to which bill they made the trustees Williams and Blackwell and Charles T. Wortham & Co. defendants. In that bill it was claimed that Mrs. Hawes was intitled to receive out of the trust fund in the hands of the trustees one-half of the rents and profits of the real estate in the city of Richmond which was held by Charles T. Wortham as trustee under the will of Mrs. Hutchinson from the death of her mother to the time of filing the bill.

This bill was answered by the trustees Williams and Blackwell, and was taken for confessed as to the other defendants. The answer admits the execution of the deed from Charles T. Wortham & Co. to them as trustees, and also their acceptance and administration of the trust, and avers that "of the claim made in the bill of the complainants they have no personal knowledge, and ask that it may be established by proof." Such proceedings were had under this bill and answer that it was established, and so decreed, that Hawes and wife were creditors of the separate assets of C. T. Wortham for the sum of $4,261.68. This

sum so decreed was paid to them by the trustees out of the trust fund, it being the rents and profits of the real estate of which C. T. Wortham was trustee. As to this claim there is no further controversy, and Hawes and wife are out of the case so far as this court is concerned.

But it appears that during the pendency of this suit, and after a commissioner was directed to take proof of Mrs. Hawes' claim, and *before* said commissioner had returned his report, Mrs. Sloan filed her cross-bill, in which she claimed that she was entitled in the same right as Mrs. Hawes, to one-half of the rents and profits of the real estate devised by her grandmother to Chas. T. Wortham, trustee, from the date of the death of her mother to the time of the filing of her cross-bill. In their answer to this cross-bill the trustees, Williams and Blackwell, aver that whatever claim Mrs. Sloan may have had prior to her marriage with John A. Sloan against her father, Chas. T. Wortham, as trustee of the property mentioned in the cross-bill, became the property of her husband upon her marriage, and was assigned by him to respondents, as trustees, by the deed from Chas. T. Wortham and wife and John A. Sloan, dated December 16th, 1872, in trust for the benefit of the creditors of Charles T. Wortham and John A. Sloan individually, and as partners composing the firm of Charles T. Wortham & Co.

Under this cross-bill and answer a commissioner of the court ascertained the claim of Mrs. Sloan, as creditor against the separate assets of Charles T. Wortham, for her portion of the rents and profits of the real estate held by him as trustee from the death of her mother up to the 30th of April, 1865, the date of her marriage with Sloan, to be the sum of $1,578, with interest on $1,368.75 from April 30th, 1865, until paid. And it being also ascertained by report of said commissioner that John A. Sloan is insolvent, and that Mrs. Sloan had no separate means of support for herself

and her children, this amount was directed by the court to be settled upon Mrs. Sloan as a reasonable settlement under the wife's equity; and further directed, that this fund should be invested for the sole and separate use of Mrs. Sloan for her life, free from the debts, liabilities and control of John A. Sloan, her husband, or any future husband, with remainder to such of her children as may survive her. It was from this decree that an appeal and *supersedeas* was awarded by one of the judges of this court.

It is plain, upon the facts above stated, that the husband, Sloan, did not reduce into his possession before the execution of the deed this chose in action of the wife, which consisted in an unliquidated claim for rents and profits. Indeed, it is admitted that there was no such reduction into possession *by the husband.* The truth is, that neither he nor she were aware of the existence of such claim up to the time of the execution of the deed by Wortham & Co. Wortham himself believed, up to that time, that he had a life estate in the real estate devised by Mrs. Hutchinson. No claim was made from any quarter against him for rents and profits until the original bill in this cause was filed by Hawes and wife.

The remaining question, therefore, we have to determine is, Was there a reduction into possession of this *chose* in action by the assignees of the husband? or, in other words, did the execution of the deed by Wortham and Sloan to Williams and Blackwell, trustees, transfer to them the possession of ths chose in action of the wife, or have they (the trustees) done any act to reduce it into their possession since they undertook the administration of the trust? In their answer to the cross-bill they do not even claim that they did any such act, but simply assert that whatever claim Mrs. Sloan may have became the property of her husband upon her marriage, and was assigned by him to them, as trustees, by the deed of December 16th, 1872.

Mrs. Sloan was no party to that deed, and the execution
of the deed by her husband making a general assignment
of his property to trustees for the benefit of his creditors
did not of itself operate as a reduction into possession of
this chose, which had never before been asserted, and of
the very existence of which he was entirely ignorant. In-
deed the answer of the trustees would seem to admit that
there had been no reduction to possession *when the deed was
made;* for they say that it became the property of the hus-
band on the wife's marriage, and was assigned to them by
the deed of December, 1872; they assert the simple marital
right of the husband as entitling him and his creditors to
this claim of the wife, and nowhere claim that that right
had been made absolute by reducing it into possession.
No evidence can be found in the record which shows, or
tends to show, that prior to that deed Sloan had ever re-
duced the claim into possession, or even knew of its exist-
ence.

The deed to which he was a party as one of the grantors
making a general assignment of his property to trustees
for the benefit of his creditors, did not operate to extin-
guish the wife's equity. For "it has long been settled,"
says Mr. Justice Story, "that the assignees in bankruptcy
or insolvency of the husband, and also his assignees for the
payment of debts due to his creditors generally, are bound
to make a settlement upon the wife out of her choses in
action * * in the same way, to the same extent, and under
the same circumstances as he would be bound to make
one." And though once a subject of much controversy, it
is now firmly established that a special assignee or pur-
chaser from the husband for a valuable consideration of
her *choses in action* is bound to make such settlement. 2
Story Eq. 11th Ed. § 1411, 1412. See also *Browning* v.
*Headly,* 2 Rob. R. 340. If, therefore, it can be said that by
the execution of the deed of December 16th, 1872, Sloan

assigned this *chose in action* (the claim of Mrs. Sloan against her father for rents and profits) to the trustees, they, as assignees of Sloan, take the property subject to all the equities which affect the assignor. The mere execution of the deed, and the acceptance of the deed and the acceptance of the trust, even if regarded as an assignment of the wife's chose in action, cannot be regarded as a reduction into possession by the trustees. It is proper to remark that the wife's *chose,* in the case before us, is an equitable demand, and what has been said refers to the assignment of an equitable claim. As to how far the same doctrine applies to a mere legal claim, the court does not feel called upon to express, in this case, any opinion.

The only remaining question now arises, Have the trustees since the deed and *before* the filing of Mrs. Sloan's cross bill, reduced this claim of the wife into possession, or done any act which operated to extinguish her equity? Looking to all the evidence in the cause, we must say, with the careful and able chancellor who decided the cause in the court below and whose opinion is filed in the record, we think they have done neither. Their accounts filed before Commissioner Leake do not show that they have collected and paid, or in any way disposed of, this specific claim. It is an unliquidated demand against Wortham for use and occupation. There is nothing to show that they have adjusted it and settled its amount, or that they have charged Wortham's trust with it, or carried it to the credit of Sloan's trust; nothing to show a transfer of it from Wortham's trust to that of Sloan, or any disposition of it whatever. If there had been an actual reduction into possession or any act which would operate as an entire extinguishment of Mrs. Sloan's equity, these trustees, who are both of them skillful and experienced lawyers, would have pointed it out. That they have failed to point out any specific act on their part showing such reduction into possession is

strong confirmation that there is no evidence in the record tending to show such reduction into possession on their part as will bar the wife's equity.

Indeed we think there is abundant proof in the record to show that the trustees have not *actually* reduced the *chose* to possession. This proof is furnished by the elaborate accounts which they settled before Commissioner Leake of the administration of their trust, which were returned with his report and confirmed. Statement "D" is their account of Wortham's separate estate. It shows all the payments they have made to his individual creditors, but no payment *appears on account of this debt.*

Statement "E" is their account as trustees of Sloan's separate estate. It shows all collections made of his separate assets, but *no collection appears on account of this debt.*

Statement "F" is a list of the debts due by Wortham and Wortham & Co. *No debt is mentioned as due to Sloan or his trustees.*

Statement "G" contains separate lists of the assets of Wortham & Co. and Wortham and Sloan still in the hands of the trustees. The only entry in this statement in reference to Sloan is as follows: "*John A. Sloan has no personal estate* not already converted into money."

These accounts returned by the trustees conclusively show that there was by them no *actual* reduction into possession of the chose in controversy. It is impossible to conceive of an actual reduction into possession by the trustees which neither swells the assetts of the creditor nor reduces those of the debtor.

The fact is, as shown by the record, and admitted by the trustees in their answer to the bill of Hawes and wife, they had no knowledge of the claim against Wortham for use and occupation of the real estate devised by Mrs. Hutchinson, and asked "that it might be established by proof." Before the proof was taken Mrs. Sloan, whose claim was

the same as that of Mrs. Hawes, the other daughter of Wortham, intervened by her cross-bill, asserted her rights, and after this nothing could be done by the trustees to defeat her claim or bar her equity to a settlement.

The learned counsel for the appellants, in their able argument here, base their opposition to the claim of Mrs. Sloan upon two grounds.

1st. That Sloan, before the filing of the cross-bill by Mrs. Sloan had, by signing said deed, released the debtor, Wortham; which was equivalent to a reduction into possession, and an extinguishment of Mrs. Sloan's equity.

2d. That inasmuch as they were trustees both for Wortham and Sloan, and had in their hands both the social and separate assets of each—the claim of Mrs. Sloan against Wortham being assigned by her husband by operation of the deed—this debt against the separate assets of Wortham must be regarded as actually reduced into the possession of the trustees.

Upon the first proposition it is insisted that the manifest design of the parties to this deed was, that Charles T. Wortham and John A. Sloan were to be by its execution released from all of their debts, whether they owed such debts to each other or to their joint or separate creditors; and they claim that all right of action which Sloan, as the creditor of Wortham had, was extinguished as soon as this deed was made.

Now, this argument is based upon a total misconception of the legal effect of the provision of the deed relied on. True, there was a provision in the deed that "its true intent and meaning" was that in consideration of the full surrender of all their property and of the relinquishment of the dower of Mrs. Wortham, the deed was intended "to secure to the said Wortham and Sloan the benefit of a discharge from all of their social and separate indebtedness," and all parties who received any money or benefit under

this deed should be considered and held to give "a full consent on their part to each and every provision of this deed."

But it is plain that such provision only discharged the parties from further *personal* liability. Certainly such provision did not operate as a *release of the trust fund* which had been dedicated to the payment of the social and separate debts of Charles T. Wortham & Co., composed of Wortham and Sloan. All that was intended by that provision of the deed was to bind the creditors who accepted its provisions to "discharge" Wortham and Sloan from all personal liability, and to look alone to the trust fund for payment of their debts. We are therefore of opinion that the fact that Sloan was a party to the deed accepting its provisions did not release the debt claimed by his wife against the separate assets of Charles T. Wortham in the hands of the trustees as part of the trust fund, while as a creditor (if he can be so considered), he did release Charles T. Wortham of all personal liability for said debt, as did all the creditors who accepted money or any other benefit under said deed, but none of them released by such action their claim against the trust fund.

The second ground of opposition on the part of the trustees to the claim of Mrs. Sloan, that they had in their hands all the assets, social and separate, of Charles T. Wortham & Co., and that they were both trustees for Wortham and for Sloan, and that they must therefore be considered as having reduced the claim against Wortham into their possession, cannot be maintained. We think that upon the authority of the cases of *Smith* v. *Gregory*, 26 Grat. 248, and *Utterback* v. *Cooper*, 28 Gratt. 233, that the trustees must show that by some unequivocal act on their part, it must clearly appear that they appropriated the fund in their hands to *this specific claim before* the filing of her cross bill by Mrs. Sloan. The mere fact that they held a fund in their hands, consisting of both

the social and separate assets of Charles T. Wortham & Co., is not sufficient. There must have been some distinct act indicative of their intention to transfer this specific claim from the assets of Wortham to the assets of Sloan in their hands as trustees.

Their right as trustees of Sloan was to reduce the *chose* into possession—that is, to collect it from the assets held by them as trustees of Wortham (subject, however, to the wife's right to assert her equity before reduction to possession), and then to hold it as trustees of Sloan, and after applying it primarily to Sloan's individual debts to transfer any surplus to themselves as trustees of Wortham.

Their right as trustees of Wortham was out of his separate assets in their hands to pay this debt to themselves as trustees for Sloan, in due course of administration. When they collected a sum of money, as trustees for Wortham, they continued to hold it in *that capacity* until they transferred it, either to some third person or to themselves in a different capacity. In other words, the character in which they held this specific claim, whether as trustees for Sloan or trustees for Wortham, must be clearly expressed by some act showing a transfer from themselves, as trustees for Wortham, to themselves, as trustees for Sloan, before it can be said that they have made an actual reduction into possession of said *chose*, and this, too, must have been done before the wife asserted her equity by filing her cross bill. See *Smith* v. *Gregory*, 26 Gratt. and *Utterback* v. *Cooper*, 28 Gratt. (supra).

We have carefully set out herein all the facts necessary to be noticed. The principles of law applicable to this state of facts are simple, plain and firmly established. By marriage the husband clearly acquires an absolute property in all the personal estate of his wife capable of immediate and tangible possession. But if it is such as cannot be reduced into possession except by an action at law or by a

suit in equity, he has only a qualified interest therein, such as will enable him to make it an absolute interest by reducing it into possession.    2 Story Eq. § 1405.

The husband must hold the *chose* not in any representative capacity as trustee or executor, but *as husband* he must reduce the *chose* into possession.    2 Call. 447 ; 6 Munf. 64. If he assigns the chose the assignee must reduce in into *actual* possession, and even then the assignee takes it subject to all the equities against the assignor, one of which is the wife's equity to a settlement out of the *chose in action* so assigned.    2 Story Eq. 1411 ; *Browning* v. *Headley (supra)*.    No act or intention of the husband which stops short of an *actual* reduction into possession or of an entire extinguishment of the original right of action in the wife, can operate so as to destroy her right; and the same is true of the husband's assignee.    See Judge Anderson's opinion in *White* v. *Gouldin*, 27 Gratt. 491, and the authorities cited by him.

Upon the whole case presented by the record, we are of opinion that there was neither a reduction into possession by the husband Sloan before the execution of the deed of the 16th of December, 1872, nor by the trustees Williams and Blackwell (the appellants) after the execution of said deed and *before* the filing of the cross bill by Mrs. Sloan, in which she asserted her claim as a creditor against the separate assets of Charles T. Wortham in the hands of the said trustees.    We are further of opinion that the settlement of the amount of this claim upon Mrs. Sloan was a reasonable and proper settlement under the circumstances of this case.

The court is therefore of opinion that the decree of the chancery court of the city of Richmond must be affirmed.

DECREE AFFIRMED.